UNITED STATES *v*. W. X. HUBER Co. (No. 3674)[1]

---

[1] T. D. 46991.

United States Court of Customs and Patent Appeals, March 26, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Thomas J. Canty* and *William Whynman*, special attorneys, of counsel), for the United States.
No appearance for appellee.

[Oral argument February 16, 1934, by Mr. Whynman]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Certain articles described by the collector as vases, boxes, writing sets, etc., were entered at the port of Los Angeles under the Tariff Act of 1922. These were classified by the collector under paragraphs 211 and 212 of said act, as decorated earthenware and decorated chinaware, respectively, and the entry was liquidated July 25, 1929. The importer protested as to the goods classified under said paragraph 211, claiming said goods to be dutiable under paragraph 1449 of said act.

This protest was filed September 20, 1929. Afterwards, before the first docket call of the case but more than 60 days after liquidation, the importer moved to amend its protest by adding the goods classified under said paragraph 212, and by making an additional claim, for all the goods imported, under paragraph 1704 of said act. The court permitted the amendment, adding the additional claim under said paragraph 1704 as to the goods named in the original protest, but denied the right to add the goods classified under said paragraph 212, on the ground of untimeliness. This ruling was in conformity with the authorities. *Marshall Field & Co.* v. *United States*, 20 C.C.P.A. (Customs) 225, T.D. 46037, and cases therein cited.

The paragraphs involved are as follows:

PAR. 211. Earthernware and crockeryware composed of a nonvitrified absorbent body, including white granite and semiporcelain earthernware, and cream-colored ware, and stoneware, including clock cases with or without movements,

pill tiles, plaques, ornaments, toys, charms, vases, statutes, statuettes, mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware; plain white, plain yellow, plain brown, plain red, or plain black, not painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware not specially provided for, 45 per centum ad valorem; painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 50 per centum ad valorem.

PAR. 1449. Works of art, including paintings in oil or water colors, pastels, pen-and-ink drawings, and copies, replicas, or reproductions of any of the same; statuary, sculptures, or copies, replicas, or reproductions thereof; and etchings and engravings; all the foregoing, not specially provided for, 20 per centum ad valorem.

PAR. 1704. Original paintings in oil, mineral, water, or other colors, pastels, original drawings and sketches in pen, ink, pencil, or water colors, artists' proof etchings unbound, and engravings and woodcuts unbound, original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words "painting" and "sculpture" and "statuary" as used in this paragraph shall not be understood to include any articles of utility, nor such as are made wholly or in part by stenciling or any other mechanical process; and the words "etchings", "engravings", and "woodcuts" as used in this paragraph shall be understood to include only such as are printed by hand from plates or blocks etched or engraved with hand tools and not such as are printed from plates or blocks etched or engraved by photo-chemical or other mechanical processes.

The United States Customs Court sustained the protest under said paragraph 1449 as to all of the articles which were assessed for duty by the collector at 50 per centum ad valorem under said paragraph 211. As to all other claims, the protest was overruled. From this judgment the Government has appealed. No cross appeal has been taken.

On the submission of the case here, we have not been favored with a brief on the part of the appellee, the case being submitted on the record by it.

Three witnesses were called and examined on behalf of the importer in the court below. The first of these was B. B. Bonheim, who was examiner of merchandise at the port of Los Angeles at the time of importation of the merchandise in question here, and who passed upon said merchandise. According to his testimony, the imported merchandise consisted of large vases. These were of a fawn- or tan-colored body with blue decorations, "and in the center of the vase was a medallion representing flowers or some other fancy subject." It appears from other testimony and a stipulation in the case, that these medallions were hand painted.

In response to questions, the witness Bonheim stated that he did not know how the work on these vases was put on, but expressed the opinion that they were paintings and ceramics. This statement was made:

X Q. Referring to the merchandise under protest, did you pass any of that merchandise as works of art? I mean these vases.—A. No; I did not.

The witness Alessandro Gabellieri testified that he had been importing works of art and Italian statuary and sculptures for 11 years, prior to which time he was a sculptor in Italy. The witness stated that he had gone to beginners' art schools and had produced and exhibited some works, but that none of the same had been accepted by museums. He stated that he had bought these pieces in Paris on the assurance that he would only pay duty on the porcelain parts, and that the painting would be free because it was original; that he had seen certain persons working on the articles enumerated in the affidavit attached to the entries; that he knew the people named on the affidavit. At this point in the testimony of the witness, No. 6974 of the invoice, known as Exhibit 1, was introduced in evidence. It was also then stipulated that all the articles imported were similar to Exhibit 1 as to painting, and that the vases and jardinieres were painted on both sides; that the factory where the porcelain of these articles is made is in France, and is under the control of the French Government; that the witness has been in the studio at times when the two large pieces in the invoice were being painted by painters; that the porcelain base of these articles is made by the factories, which sell them to individual painters and studios.

The witness, Dante Orgolini, testified that he was a painter, decorator, and artist, at which profession he had been working for about 12 years in Paris, Brazil, Rome, and in the United States. He stated that he had worked as an interior decorator in St. Lawrence's Church in Chicago, in St. Vincent's Church at Worcester, Mass., and in the courthouse at Santa Barbara, Calif.; that he had some experience in painting porcelain and had studied the art to some extent; that the painting on Exhibit 1 is original, giving as his reason therefor that the artist, in his opinion, would not copy from a famous work. He stated:

* * * When it is painted it must be put under the fire, so it can't be copied. Nobody could copy anything like that. * * *

Q. What would you state that the painting is?—A. Original.

He further stated that the painters named in the affidavit attached to the invoice were well-known painters and artists, and that he had seen the works of two of them in France; that his work in the United States was mural painting and decoration.

This comprises the whole of the testimony which appears in the record. Attached to the invoice and entry is an affidavit made by

the importer on entry of the goods. It was not introduced in evidence. Therefore it is not evidence in the case, under the uniform decisions of this court. *Borgfeldt & Co.* v. *United States*, 11 Ct. Cust. Appls. 421, T.D. 39433; *Eidlitz & Son* v. *United States*, 12 Ct. Cust. Appls. 56, T. D. 39998; *United States* v. *Holt & Co.*, 17 C.C.P.A. (Customs) 385, T.D. 43822; *Cintes* v. *United States*, 18 C.C.P.A. (Customs) 361, T.D. 44614; *United States* v. *Metro-Goldwyn-Mayer Corp.*, 19 C.C.P.A. (Customs) 119, T.D. 45247; *Thornley & Pitt* v. *United States*, 19 C.C. P.A. (Customs) 221, T.D. 45325. The exhibit known as Exhibit 1, while it seems to have been before the Customs Court at some stage in the proceedings, was not transmitted to this court, and seems to have gone into consumption. Therefore, this court has not had the opportunity to inspect the same.

On this showing, the trial court came to this conclusion:

Upon consideration of the entire record in the case at bar we find that the weight of the evidence establishes that Exhibit 1 is a work of art belonging to that class known as the free fine arts, and that as such it is dutiable as a work of art not specially provided for at 20 per centum ad valorem under paragraph 1449 of the Tariff Act of 1922.

Following this, and upon consideration of the stipulation that the other articles under protest were of similar character, the court also concluded that these likewise were works of art under said paragraph.

We regret that we are unable to concur in the judgment of the trial court in this respect, on this record. There is no evidence of any kind in the record, as hereinbefore set out, which indicates that the imported articles are works of art. All that one can definitely gather from this record is that painted medallions were placed upon these vases by someone. In the case of two of the exhibits, the testimony of the witness Orgolini might be held to show that these were painted by artists. However, the fact that they were painted by artists does not at all prove that they were works of art. The affidavit of the importer not having been introduced in evidence, and there being no sample available, it becomes impossible for this court to identify any of the imported articles as the work of any particular person.

The classification by the collector creates the presumption that the goods were decorated earthenware, and that they were not within the purview of either paragraph 1449 or paragraph 1704. The burden rests upon the importer to overcome this presumption. This has not been done, if the matter be judged upon the record now before us, and this is all we have to judge the matter by. Nor was there anything in this record to sustain a judgment below that the goods were free of duty under paragraph 1704. The trial court did not agree with the importer in this claim and expressly found:

* * * The testimony introduced in the case at bar does not establish that the paintings on the items in controversy are in mineral colors, and there is also

a total failure of proof as to whether or not the articles serve a utilitarian purpose. It is a matter of common knowledge that vases and jardinieres usually serve a utilitarian purpose, and it is only in particular instances, upon the production of affirmative proof, that they can be held to serve no purpose other than ornamentation.

In addition it will be noted that the record does not show definitely that these imported articles were original paintings in oil or colors, and entirely fails to show that the imported articles were not articles of utility.

We are of opinion, from a consideration of these matters, that the importer failed to make the proof required of it by law, and that, therefore, the judgment of the United States Customs Court is in error, and it is accordingly *reversed*, insofar as it holds the goods classified under paragraph 211 of the Tariff Act of 1922 to be dutiable under paragraph 1449 of said act. In all other respects, it is *affirmed*.

### DISSENTING OPINION

BLAND and GARRETT, Judges: It is our view that the judgment of the Customs Court should be affirmed on the record as it stands. If, however, the record is not regarded as sufficiently full, this court has an abundance of authority to remand the case for further proceedings in order that justice may be done. The appellee was not permitted to introduce pertinent testimony concerning the quality and nature of its goods. Men skilled in art subjects have the right to give it as their opinion that a given thing is a work of art. Such opinions are not always controlling, but certainly no one would contend that they are not competent, and the fact that the counsel for the appellee did not take exceptions and assign cross errors or file any brief in this court makes little difference in our view of the case. Appellee won its case below upon a record which shows that the vases contained original paintings in ceramic colors, the painters being artists of note. Some of these vases are worth as much as $350 per pair. This court has never viewed such articles as utilitarian. *United States* v. *Baumgarten & Co.*, 2 Ct. Cust. Appls. 321, T.D. 32052.

A vase containing a ceramic painting by an artist and possessing artistic merit is a work of art. *United States* v. *Royal Copenhagen Porcelain, Inc.*, 17 C.C.P.A. (Customs) 464, T.D. 43929. Moreover, under the circumstances of this case, it seems, to say the least, unusual for the Government to object to the introduction of competent testimony, succeed in having it excluded, and then complain in this court because the record does not contain the necessary proof.

The collector's classification is presumed to be correct on the theory that he is familiar with the subject and advised as to all facts necessary to such classification. The examiner in this instance not only had passed upon this kind of article for many years, but showed special

qualifications in this line. When called as a witness for appellee, he was not permitted, for some reason, to testify freely concerning the vases which he had passed upon. If he did not think they were works of art, and we are inclined to the view that he had probably changed his mind on the subject, he should have been permitted to give his reasons for so thinking.

Moreover, the fact that the exhibit representing the imported merchandise was before the lower court and not before us would seem to be another reason for refraining from reversing the judgment of the Customs Court.